# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

DAVID BARRON,

                    Petitioner,          :    Case No. 1:23-cv-591

    - vs -                        District Judge Susan J. Dlott
                                        Magistrate Judge Michael R. Merz

WARDEN, Madison Correctional
  Institution,

                                   :
                    Respondent.

## REPORT AND RECOMMENDATIONS

This habeas corpus case, brought *pro se* by Petitioner David Barron under 28 U.S.C. § 2254, is before the Court for decision on the merits. Relevant pleadings are the Petition (ECF No. 13), the State Court Record (ECF No. 21), the Return of Writ (ECF No. 22), the Supplement to Amended Petition (ECF No. 28), the Supplemental Return of Writ (ECF No. 33), and Petitioner's Traverse (ECF No. 40, beginning at PageID 2141).

**Litigation History**

On June 8, 2020, a Warren County Grand Jury returned an indictment of Barron charging him with six counts of trafficking in persons-commercial sex acts (Counts 1-6); six counts of compelling prostitution, each with a human trafficking specification (Counts 7-12); six counts of promoting prostitution (Counts 13-18); three counts of rape (Counts 19-21); one count of abduction (Count 22),

1

one count of aggravated possession of drugs, (Count 23), one count of receiving stolen property (Count 24), one count of aggravated menacing, (Count 25); one count of intimidation of an attorney, victim, or witness (Count 26), two counts for felonious assault (Counts 27 and 28); and one count of corrupting another with drugs (Count 29)(Indictment, State Court Record, ECF No. 21, Ex. 1). After the State rested at trial, the court dismissed counts 2, 4, 6, 8, 10, 12, 14, 16, 18, 20, 23, 24, 25, and 26 on motion for judgment of acquittal. The jury found Barron guilty of counts 1, 3, 5, 13, 15, 17, 22, 27, and 28 and not guilty of the remaining charges. (ECF No. 21, Ex. 10). He was sentenced to fourteen to fifteen years of incarceration. *Id.* at Ex. 12.

With new counsel, Barron appealed to the Ohio Court of Appeals for the Twelfth District. That court affirmed the conviction. *State v. Barron*, 2022-Ohio-102 (Ohio App. 12th Dist. Jan. 18, 2022). The Ohio Supreme Court declined to exercise jurisdiction over a further appeal. *State v. Barron*, 167 Ohio St.3d 1511 (2022).

On April 11, 2022, Barron filed an application to reopen his direct appeal on claims of ineffective assistance of appellate counsel (Application, State Court Record, ECF No. 21, Ex. 23). The Twelfth District denied that application on June 24, 2022. *Id.* at Ex. 26. Barron did not appeal to the Ohio Supreme Court.

On December 21, 2021, Barron filed a petition for post-conviction relief under Ohio Revised Code § 2953.21. *Id.* at Ex. 27. The trial judge found the Petition was not properly filed because it was not signed and did not contain a certificate of service. (Decision and Entry, State Court Record, ECF No. 21, Ex. 39). The judge also found Barron's claims of ineffective assistance of trial counsel barred by *res judicata* because they could have been but were not raised on direct appeal. *Id.* at PageID 841. In the alternative the court found trial counsel's performance satisfied both prongs of the governing standard in *Strickland v. Washington,* 466 U.S. 668 (1984).

Barron appealed and the Twelfth District affirmed dismissal of the Petition. *State v. Barron*, 2023-Ohio-1249 (Ohio App. 12th Dist. Apr. 17, 2023). The Ohio Supreme Court declined to exercise jurisdiction over a subsequent appeal. *State v. Barron*, 170 Ohio St.3d 1517 (2023).

Barron filed his habeas corpus Petition in this Court September 15, 2023, pleading the following grounds for relief:

> **Ground One**: The felonious assault charge relating to Rebecca Carnahan [Rose] must be reversed because venue was not properly established.
>
> **Ground Two**: Because the offense of promoting prostitution is more specific than the general offense of trafficing [sic] in persons, which is a general offense, under R.C. 1.51, the specific offense of promoting prostitution must prevail and the convictions for trafficking in persons must be reversed.
>
> **Ground Three:** Defendant must be re-sentenced due to the failure of the trial court to merge allied offenses.
>
> **Ground Four**: Barron['s] convictions and sentence must be reversed because he did not receive effective assistance of counsel.
>
> **Ground Five:** Barron['s] sentence was unconstititonal [sic].
>
> **Ground Six**: The felonious assault conviction against [sic] Rebecca Carnahan [Rose] was not supported by sufficient evidence.
>
> **Ground Seven:** Barron's convictions were againse [sic] the manifest weight of the evidence.

(Petition, ECF No. 1, PageID 3-6).

On February 15, 2024, Barron filed another habeas corpus petition where he raised the following grounds for relief:

> **Ground One:** The felonious assault charge relating to Rebecca [Rose] must be reversed because venue wasn't established.
>
> **Ground Two:** The conviction for promoting prostitution must prevail, and the trafficking in persons conviction must be reversed.

3

**Ground Three:** Defendant must be re-sentenced due to the failure of the trial court to merge allied offenses.

**Ground Four**: Barron['s] convictions and sentence must be reversed because he did not receive effective assistance of counsel.

(Second Petition, ECF No. 13, PageID 33-48).

On July 15, 2024 Petitioner filed a Supplement to his Petition, pleading the following grounds for relief labeled as assignments of error:

**Assignment of Error No. 5**: Barron's Sentence Was Unconstitutional

Barron argues that his sentence under the Reagan Tokes Act was unconstitutional because it violates the separation-of-powers doctrine.

**Assignment of Error No. 6:** The Felonious Assault Conviction Against [Rose] Was Not Supported By Sufficient Evidence.

Barron argues that the state presented legally insufficient evidence to allow a reasonable factfinder to convict him of felonious assault because of a lack of evidence that Rose suffered serious physical harm. Barren also argues that the evidence was insufficient to establish that he "knowingly" caused Rose serious physical harm because the evidence indicated that he struck her with an open-handed slap.

**Assignment of Error No. 7:** Barron's Convictions Were Against The Manifest Weight Of The Evidence.

In his final assignment of error, Barron argues that all his convictions were against the manifest weight of the evidence because Amy was not a credible witness. Barron further argues that her explanation for how she became entangled and eventually under Barron's control made no sense.

(Supplement to Petition, ECF No. 28, PageID 2065-67.)

# Analysis

### Ground One: Improper Venue

In both the First and Second Petitions, Barron claims his conviction is unconstitutional because venue was not established. This claim as it was made in the state courts was that the felonious assault took place at the Red Roof Inn in Hamilton County and not in Warren County where the case was tried. (Petition, ECF No. 13, PageID 38).

Respondent asserts this claim is not cognizable in federal habeas corpus because it raises only a state law claim (Return, ECF No. 22 PageID 2028-29). Petitioner responds that he raised this issue as a federal claim in both the Twelfth District and the Ohio Supreme Court and both courts decided it on the merits (Reply, ECF No. 40, PageID 2155-60).

Barron's First Assignment of Error on direct appeal asserted venue had not been proved, but cited only state law, *State v. Birt,* 2013-Ohio-1379 (Ohio App. 12th Dist. Apr. 13, 2013), and *State v. Headley*, 6 Ohio St.3d 475 (1983). Both of those cases discuss venue as a matter of Ohio law, not federal constitutional law.

In deciding the venue assignment of error, the Twelfth District in this case wrote:

> P27 Assignment of Error No. 1:
>
> P28 THE FELONIOUS ASSAULT CHARGE RELATING TO [ROSE] MUST BE REVERSED BECAUSE VENUE WAS NOT PROPERLY ESTABLISHED.
>
> P29 Barron argues that the felonious assault count against Rose was premised on a criminal act that took place at the Red Roof Inn in Hamilton County and the state failed to establish that venue was appropriate in Warren County.
>
> A. Law Applicable to Venue
>
> P30 "Venue is not a material element of the offense, yet it is a fact that must be proved beyond a reasonable doubt, unless it is waived by the defendant." *State v. Birt,* 12th Dist. Butler No. CA2012-02-

031, 2013-Ohio-1379, ¶ 27, 5 N.E.3d 1000; *State v. Headley*, 6 Ohio St.3d 475, 477, 6 Ohio B. 526, 453 N.E.2d 716 (1983). Venue lies in any jurisdiction in which the offense or any element of the offense was committed. R.C. 2901.12(A).

P31 R.C. 2901.12(H) provides that when an offender commits offenses in different jurisdictions as part of a "course of criminal conduct," venue lies for all the offenses in any jurisdiction in which the offender committed one of the offenses or any element of one of those offenses. See also *State v. Hubbard,* 12th Dist. Butler No. CA2006-10-248, 2008-Ohio-3379, ¶ 11. R.C. 2901.12(H) further provides that "any of the following is prima-facie evidence of a course of criminal conduct:"

> (1) The offenses involved the same victim, or victims of the same type or from the same group.

> (2) The offenses were committed by the offender in the offender's same employment, or capacity, or relationship to another.

> (3) The offenses were committed as part of the same transaction or chain of events, or in furtherance of the same purpose or objective.

### B. Whether Venue Was Proper in Warren County

P32 Barron argues that the only "course of criminal conduct" evidence presented by the state at trial was that the offenses involved the same victim or victims. He points out that, except for the felonious assault of Rose that occurred in Hamilton County, he was acquitted of every count of the indictment that involved Rose. Thus, he argues that Rose was not the "same victim" for any other offense of which he was convicted, and so the Warren County Court of Common Pleas lacked venue with respect to Barron's assault of Rose.

P33 A careful review of the record reveals that the facts and circumstances in evidence were sufficient to demonstrate that venue properly lay in both Warren County and Hamilton County.

P34 First, R.C. 2901.12(H)(1) refers not only to "the same victim," but also to "victims of the same type or from the same group." The state argues that Amy and Rose were "victims of the same type or from the same group." Barron argues that the state is incorrect

6

because "such an interpretation of R.C. 2901.12(H) is far too attenuated." Barron fails to explain why such an interpretation is "far too attenuated." We conclude that the state is correct. The evidence at trial established that Barron assaulted Rose in the course of his efforts to control Amy and Rose through force and intimidation. Barron need not be convicted of trafficking or promotion of prostitution with regard to Rose in order for Barron's assault of Rose to place her in the same class of victims as Amy, who was also subject to Barron's use of force and intimidation.

P35 Second, even if Barron were correct that Rose and Amy may not qualify as "victims of the same type or from the same group," the state still presented prima facie evidence demonstrating that venue is appropriate in Warren County because the evidence showed that Barron's assault of Rose took place as part of "the offender's same employment, or capacity, or relationship to another" as described in R.C. 2901.12(H)(2), and "in furtherance of the same purpose or objective" as described in R.C. 2901.12(H)(3).

P36 Amy's testimony, along with the voluminous documentary evidence, demonstrated that Barron, over the course of two months, operated a prostitution business at two hotels in Warren County and one hotel in Hamilton County. As part of the operation of the business, he rented rooms at the hotels. He posted advertisements online seeking to recruit johns. According to Amy, he directed her and Rose to have sex with the johns and collected the money obtained from the johns. Amy testified that Barron provided food, drink, and narcotics to her and Rose. Amy testified that he maintained control over Rose and her in both Hamilton and Warren Counties by plying them with narcotics and by using force and intimidation. Finally, according to Amy, it was the "same system" at each of the three hotels.

P37 The evidence established that the felonious assault of Rose occurred at the Red Roof Inn during the ongoing course of the prostitution business operated by Barron in Warren County and Hamilton County. The evidence showed that Barron committed the offenses of which he was convicted in his same employment or capacity, i.e., his work as a "pimp." R.C. 2901.12(H)(2). The evidence also established that Barron committed the offenses in furtherance of the same purpose or objective, which was to financially profit from selling the bodies of Amy and Rose. R.C. 2901.12(H)(3). See *State v. Rankin*, 12th Dist. Clinton No. CA2004-06-015, 2005-Ohio-6165, ¶ 23 (noting that the record contained "ample evidence" showing a course of criminal conduct, including same victim, same modus operandi, and same purpose).

> P38 Accordingly, venue on the felonious assault charge was proper in both Warren County and Hamilton County and it was not improper for the state to pursue charges against Barron in Warren County. R.C 2901.12(H). We overrule Barron's first assignment of error.

*State v. Barron*, 2022-Ohio-102, ¶ 27-38 (Ohio App. 12th Dist. 2022). Thus there is no mention of the United States Constitution in either Barron's brief on appeal or in the opinion of the Twelfth District. Barron's claim that the Ohio Supreme Court decided his federal constitutional venue claim on the merits is hollow because the Ohio Supreme Court declined jurisdiction of his direct appeal. *State v. Barron*, 167 Ohio St.3d 1511 (2022).

For proof that venue is a federal constitutional issue, Barron cites the Sixth Amendment to the Constitution, part of the Bill of Rights, which provides:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense.

However, Barron never fairly presented his venue claim to the Ohio courts as a federal constitutional claim. He does not cite the Sixth Amendment or indeed any federal law in his brief on direct appeal and thus has procedurally defaulted this claim as a federal constitutional claim. Whether or not the State satisfied the Ohio venue requirements is a question of Ohio law on which this Court is bound by the decision of the Twelfth District. *Bradshaw v. Richey*, 546 U.S. 74 (2005). Habeas corpus courts are not authorized to review state court decisions on questions of state law. *Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir. 1993), *cert. denied,* 509 U.S. 907 (1993).

Petitioner's claims relating to venue should be dismissed with prejudice.

**Ground Two: General Versus Specific Offenses**

In Ground Two as pleaded in both Petitions, Barron asserts the offense of promoting prostitution is more "specific" than the more general offense of trafficking in persons and therefore the promoting prostitution claim must "prevail."

He presented this claim on direct appeal and the Twelfth District decided it as follows:

{¶39} Assignment of Error No. 2:

{¶40} BECAUSE THE OFFENSE OF PROMOTING PROSTITUTION IS MORE SPECIFIC THAN THE GENERAL OFFENSE OF TRAFFICKING IN PERSONS, WHICH IS A GENERAL OFFENSE, UNDER R.C 1.51, THE SPECIFIC OFFENSE OF PROMOTING PROSTITUTION MUST PREVAIL AND THE CONVICTIONS FOR TRAFFICKING IN PERSONS MUST BE REVERSED.

{¶41} Barron argues that the offense of promoting prostitution (R.C. 2907.22[A][2]), is a more specific offense than the offense of trafficking in persons (R.C. 2905.32[A][1]), and that pursuant to R.C. 1.51 he could not be convicted of trafficking in persons if he was convicted of promoting prostitution.

**A. Standard of Review**

{¶42} Barron failed to argue in the proceedings before the trial court that he should have been charged with promoting prostitution rather than trafficking in persons. Barron has therefore waived all error except plain error. *State v. Evick*, 12th Dist. Clermont No. CA2018-03-016, 2019-Ohio-2791, 2019 WL 2929042, ¶ 24. To constitute plain error there must be a deviation from a legal rule. *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). Second, the error must be fundamental, palpable, and obvious on the record such that it should have been apparent to the court without an objection. *State v. Barnette*, 12th Dist Butler No. CA2012-05-099, 2013-Ohio-990, 2013 WL 1094992, ¶ 30. Third, the error must have affected Barron's substantial rights, that is, the error must have affected the outcome of the trial. *Barnes* at 27, 759 N.E.2d 1240. An appellate court will take notice of plain error with "utmost caution, under exceptional circumstances and only to prevent a manifest

miscarriage of justice." *State v. Baldev*, 12th Dist. Butler No. CA2004-05-106, 2005-Ohio-2369, 2005 WL 1131740, ¶ 12.

**B. Analysis**

{¶43} The trafficking in persons statute provides:

> A prosecution for a violation of this section does not preclude a prosecution of a violation of *any other section* of the Revised Code. One or more acts, a series of acts, or a course of behavior that can be prosecuted under this section or any other section of the Revised Code may be prosecuted under this section, the other section of the Revised Code, *or both sections.* * * *.

(Emphasis added.) R.C. 2905.32(D). Based on the express language of the trafficking in persons statute, the state may prosecute a defendant for trafficking in persons and may also prosecute a defendant for any other offense in the Revised Code that arises from the same act, series of acts, or course of behavior. Thus, to the extent any of the acts involved in the trafficking in persons counts arose from the same acts involved in the promoting prostitution counts, a prosecution under both sections was expressly authorized by statute.

{¶44} Barron argues that *State v. Volpe*, 38 Ohio St.3d 191, 527 N.E.2d 818 (1988), prevents him from being convicted of trafficking in persons if he was convicted of the more specific offense of promoting prostitution. In *Volpe*, the Ohio Supreme Court held that, where "there is no manifest legislative intent that a general provision of the Revised Code prevail over a special provision, the special provision takes precedence." *Volpe* at syllabus. In *Volpe* the state charged the defendants with "gambling," in violation of R.C. 2915.02, a misdemeanor, and possession of criminal tools, in violation of R.C. 2923.24, a felony. *Id.* at 191-192, 527 N.E.2d 818.

{¶45} Former R.C. 2915.02(A)(5) prohibited possession of gambling devices, while R.C. 2923.24 more generally prohibits possession of "criminal tools."[7] Relying upon R.C. 1.51[8], the supreme court determined that R.C. 2915.02(A)(5) and R.C. 2923.24 were irreconcilable. *Id.* at 193, 527 N.E.2d 818. The court reasoned that, "since R.C. 2915.02 and 2923.24 provide for different penalties for the same conduct, they cannot be construed to give effect to both." *Id.* Further, since both statutes were enacted on the same date, the court determined that under R.C. 1.51, the general law, possession of criminal tools, did not prevail as being the "later adoption." *Id.* at 194, 527 N.E.2d 818. Finally, the supreme court

10

held that "the fact that the General Assembly enacted R.C. 2915.02(A)(5) to reach possession and control of gambling devices indicates that it did not intend for R.C. 2923.24 to reach possession and control of such devices." *Id.*

{¶46} In this case, Barron argues that trafficking in persons is the more general offense and promoting prostitution the more specific offense, which should have taken precedence under R.C. 1.51 and pursuant to *Volpe*. We find that neither R.C. 1.51 nor *Volpe* compel the result Barron urges.

{¶47} R.C. 2905.32(A)(1), trafficking in persons, provides in relevant part:

> No person shall knowingly recruit, lure, entice, isolate, harbor, transport, provide, obtain, or maintain * * * another person if * * * the following applies:
>
> The offender knows that the other person will be * * * compelled to engage in sexual activity for hire * * *.

{¶48} The statute further clarifies that "[f]or a prosecution under division (A)(1) of this section, the element 'compelled' does not require that the compulsion be openly displayed or physically exerted. The element 'compelled' has been established if the state proves that the victim's will was overcome by force, fear, duress, intimidation, or fraud." R.C. 2905.32(B).

{¶49} R.C. 2907.22(A)(2), promoting prostitution, states:
> No person shall knowingly:
> * * *
> Supervise, manage, or control the activities of a prostitute in engaging in sexual activity for hire * * *.

{¶50} The offense of trafficking in persons is focused on the actions of a defendant that cause a victim to be "compelled"—through force, fear, duress, intimidation, or fraud—to enter into and then remain in prostitution. For example, in *State v. Warren*, 8th Dist. Cuyahoga No. 102181, 2015-Ohio-3671, 2015 WL 5309433, *482 the defendant—charged and convicted of trafficking in persons—exercised "pimp control" over his victims. *Id.* at ¶ 7. He instilled fear through beating another girl in front of the victims, taking money and social security benefits from a victim, confiscating the victims' birth certificates, and by mentally and emotionally abusing the victims to the point of complete submission to his control. *Id.* at ¶ 38-40.

11

{¶51} In *State v. Brown*, 2019-Ohio-1235, 134 N.E.3d 783, the Eighth District Court of Appeals found that trafficking in persons involved affirmative actions that "persuade, attract, or enable another" to engage in prostitution, or where a defendant aids "in the act of prostitution, profits from another's prostitution, and exercises some dominion or control over the individual." *Id.* at ¶ 47. There, the victim initially stated she voluntarily engaged in prostitution. *Id.* at ¶ 51. The defendant allowed her to keep half of the money she earned, and the court found this was an enticement that led her to believe that she would be able to provide for herself and her son. However, the defendant subsequently began to keep all the money the victim earned and began maintaining and providing support for the victim and her son. Over the course of several weeks, the victim became overcome with fear and duress that if she left the defendant, she would not be able to support herself or her son. *Id.*

{¶52} The offense of promoting prostitution, on the other hand, is focused on the regular activities of supervision, management, and control that relate to operating a prostitution business. The Second District Court of Appeals has determined that a defendant's conviction for promoting prostitution was supported by sufficient evidence where the evidence indicated that the defendant created "Backpage" advertisements soliciting johns, posted photographs of the prostitute, and the defendant's phone number was listed as the contact number in the advertisements. *State v. Satterfield*, 2017-Ohio-5616, 94 N.E.3d 171, ¶ 25. When an individual called the phone number, the defendant answered and arranged the "date," which involved negotiating the price, location, duration, and time that the date was to occur. The defendant arranged transportation to and from the date for the prostitute. The defendant rode with the prostitute to the date and waited in the vehicle while the date was occurring. Finally, evidence indicated the defendant expected to receive a share of the profits after the date was completed. *Id.*

{¶53} In this case, there is a distinction between the evidence supporting Barron's convictions for trafficking in persons and promoting prostitution. With regard to trafficking in persons, Amy's testimony established that Barron maintained her prostitution activities using force, fear, duress, and intimidation. Amy testified that Barron "told her to do it," meaning have sex with johns, and that she was aware that if she did not, there would be "consequences." She knew about "consequences" because she had seen Rose suffer "consequences" before she herself began to engage in prostitution for Barron at the Super 8. The consequences included physical assault. Amy also testified that Barron threatened to post

photographs of her online, which she did not want because of her children. Barron also set rules which allowed him to maintain Amy and Rose in a subservient role, which included that they had to be completely nude when they were in his room, and they were not allowed to have passcodes on their phones. Barron periodically let Amy go visit her family but always kept certain personal items to ensure she would return. This included her rings, jewelry, phone, and wallet, which contained identification, credit cards, and her social security card. Amy also testified that Barron forced her to take methamphetamine which resulted in her becoming addicted. And because Barron took all the money resulting from the prostitution activities, Barron maintained Amy in prostitution because she was necessarily reliant on him to provide her with shelter, food, and narcotics.

{¶54} On the other hand, the evidence supporting the offense of promoting prostitution included the numerous exhibits admitted at trial demonstrating how Barron used digital tools (the internet, and text messages) to manage his prostitution business. The evidence indicated that he created online advertisements for sexual services. He took photographs of the women or used their "selfies," which he would forward to his phone. He listed his phone number on advertisements. Barron determined the price for the sexual services and listed the price on the online advertisement as (for example) "qv60hhr100." He rented hotel rooms at the various hotels where Amy and Rose would meet johns for sex. He communicated with the johns, informing them where to meet, and negotiated on the sexual services that would be performed and the price. He instructed Amy on what to say to johns when she was alone with them. He instructed Amy on the rules of dealing with johns, writing in one text message: "Rule number 1 in this game. Never get in a john car thats pulling off." [Sic.] He monitored the time that the johns spent with Amy and Rose and would determine when the john's time was up.

{¶55} Based on the foregoing, we conclude that R.C. 1.51 and *Volpe* did not preclude Barron's convictions for trafficking in persons when he was also convicted of promoting prostitution. Barron has failed to demonstrate error, much less plain error, in his convictions for both trafficking in persons and promoting prostitution. We therefore overrule Barron's second assignment of error.

*State v. Barron, supra.*

Respondent argues that Petitioner has not stated a federal constitutional claim for relief

with respect to this second claim. Petitioner does not argue this claim in his Traverse. The question of whether Ohio Revised Code § 1.51 required conviction on only one of these two charges is a question of state law on which we are bound by the Twelfth District's conclusion. Petitioner's second ground for relief should be dismissed with prejudice.

**Ground Three: Failure to Merge Allied Offenses of Similar Import**

In his Third Ground for Relief, Petitioner argues he must be re-sentenced because the trial court failed to merge allied offenses of similar import. Ohio Revised Code § 2941.25 requires the merger of allied offenses of similar import after verdict. Petitioner argued this should have been done with a number of offenses of which he was convicted, but only as a matter of Ohio law. The Second District rejected this claim. *State v. Barron, supra*, at ¶¶ 57-66.

Petitioner presented this claim purely as a matter of state law to the Twelfth District. We are bound by that court's interpretation and application of Ohio law. There is no federal constitutional prohibition against separate sentences for offenses which are of similar import under Ohio law and in any event Petitioner did not present this claim as a federal constitutional claim to the Ohio courts. Petitioner does not argue this claim in his Traverse. Ground Three should be dismissed with prejudice.

**Ground Four: Ineffective Assistance of Trial Counsel**

In Ground Four in both Petitions, Barron claims he received ineffective assistance of trial counsel. As he presented this claim to the Twelfth District, he asserted two instances of ineffective

assistance: (1) Failure to strike an allegedly biased juror and (2) failure to argue the allied offenses claim. *State v. Barron, supra*, ¶ 69. That court decided this ineffective assistance of trial counsel claim as follows:

### A. Standard of Review

{¶70} To prevail on an ineffective assistance of counsel claim, Barron must establish (1) deficient performance by trial counsel, that is, performance falling below an objective standard of reasonable representation, and (2) prejudice, that is, a reasonable probability that but for counsel's errors, the result of the proceedings would have been different. *State v. Taylor*, 12th Dist. Fayette No. CA2018-11-021, 2019-Ohio-3437, 2019 WL 4010955, ¶ 16, citing *Strickland v. Washington*, 466 U.S. 668, 687-688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and *State v. Mundt*, 115 Ohio St.3d 22, 2007-Ohio-4836, ¶ 62, 873 N.E.2d 828. The failure to demonstrate either prong is fatal to an ineffective assistance of counsel claim. *State v. Kaufhold*, 12th Dist. Butler No. CA2019-09-148, 2020-Ohio-3835, 2020 WL 4280275, ¶ 54. In considering an ineffective assistance claim, an "appellate court must give wide deference to the strategic and tactical choices *486 made by trial counsel in determining whether counsel's performance was constitutionally ineffective." *State v. McLaughlin*, 12th Dist. Clinton No. CA2019-02-002, 2020-Ohio-969, 2020 WL 1244797, ¶ 54.

### B. Failure to Strike Allegedly Biased Juror

{¶71} Barron contends that trial counsel provided ineffective assistance by failing to strike a juror who expressed concerns about being a fair and impartial juror.

{¶72} A touchstone of a fair trial is an impartial trier of fact, that is, a jury capable and willing to decide the case solely on the evidence before it. *State v. Bates*, 159 Ohio St.3d 156, 2020-Ohio-634, ¶ 30, 149 N.E.3d 475, citing *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 554, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984). Jury selection is the primary means by which a court may enforce a defendant's right to be tried by a jury free from any negative predisposition about the defendant. *Id*., citing *Gomez v. United States*, 490 U.S. 858, 873, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989). A trial court must engage in an adequate voir dire in order to remove prospective jurors who will not be able to impartially follow the court's instructions and evaluate the evidence. *Id.*, citing

*Rosales-Lopez v. United States*, 451 U.S. 182, 188, 101 S.Ct. 1629, 68 L.Ed.2d 22 (1981).

{¶73} To maintain a claim that a biased juror prejudiced him, a defendant must show that the juror was actually biased against him. *Id.* at ¶ 25. "Actual bias can be revealed through a prospective juror's express admission, but 'more frequently, jurors are reluctant to admit actual bias' and it must be exposed through circumstantial evidence." *Id.*, citing *Miller v. Webb*, 385 F.3d 666, 673 (6th Cir. 2004). The Ohio Supreme Court has consistently declined to second-guess trial strategy decisions or impose hindsight views about how counsel might have voir dired the jury differently. *State v. Wallace*, 2019-Ohio-442, 130 N.E.3d 999, ¶ 56, citing *State v. Pickens*, 141 Ohio St.3d 462, 2014-Ohio-5445, ¶ 205, 25 N.E.3d 1023 (overruled on other grounds.). "[C]ounsel is in the best position to determine whether any potential juror should be questioned and to what extent." *State v. Murphy*, 91 Ohio St.3d 516, 539, 747 N.E.2d 765 (2001).

{¶74} During voir dire, the court asked the juror in question whether there was anything he would like to share with the court or attorneys as far as whether he could decide the case fairly and impartially. The following exchange then occurred:

> **The juror:** Judge, I was excited about being on a jury for the very first time; however, I look at let's say our community in a respect that we don't have enough police officers on the street. I don't think that the State is going to bring a case that they must have been investigating for months unless it was a really strong case. So I come in with an implicit bias that the defendant is probably 90 percent guilty. That's a bias that I have, I just wanted to be honest.

> **The court:** Okay. It's not that unusual. It's why we have this part of the trial. And if you were on trial in another part of the country, for example, other than where you grew up, what would you expect from a juror? Would you expect that your mindset would be that of a fair juror?

> **The juror:** Of course. However, I'm 63 years old and I've lived my life by trying to avoid things that would get me into trouble and engage police contact. Therefore, I can't ever envision myself being in that situation.

> **The court:** Okay. But I'm trying to make sure that you would be – if you were on trial for something, if you have

16

been accused of something and let's just remember we're talking about a person who's presumed innocent. By law he's presumed innocent. Would you trust yourself on that jury?

**The juror:** Yes.

**The court:** Okay. Any other reason you couldn't serve? You remember when I was asking at the beginning if there's anything going on at home, sick parent, anything like that?

**The juror:** No, sir.

{¶75} Later in the voir dire, defense counsel had several direct exchanges with the juror:

**Defense counsel:** * * * Every one of you who is chosen is going to be the judge of the facts. Do you understand that? * * * [indicating the juror], how about you?

**The juror:** That's the way I would view the question. I'm going to examine the evidence – examine the evidence and based on the judge's instructions determine guilt or innocence. I will be responsible for determining the credibility of any of the witnesses that are presented. * * *

**Defense counsel:** Alternatively, in the event that none of you are convinced, can you also agree that if you're not convinced that you won't sign a guilty verdict? [indicating the juror] –

**The juror:** Yes, sir.

**Defense counsel:** If you're not firmly convinced of the truth of the charge, can you say nope, I'm going to find not guilty?

**The juror:** Yes, sir. * * *

**Defense counsel:** [Asks jurors questions about whether they watch shows like Better Call Saul and whether they believe that all defense attorneys are "shady."]

**The juror:** I don't watch those shows, but I'm going to weigh the evidence and take the judge's instructions and discuss it with the jury.

\* \* \*

**Defense counsel:** All right. Is there anybody who absolutely has to hear Mr. Barron testify in order for them to make a decision on this case? [indicating the juror].

**The juror:** No, sir.

{¶76} In addition, defense counsel interviewed the jurors at length in a group questioning format. All jurors agreed that they would remain fair and impartial and follow the court's instructions. All jurors agreed that Barron was entitled to the presumption of innocence and that it was the state's job to prove him guilty beyond a reasonable doubt.

{¶77} The juror in question honestly revealed a bias that was, as noted by the trial court, not unusual. However, the juror repeatedly assured the court and the parties of his ability to remain impartial, to follow the court's instructions, and to fairly decide the case. The juror's responses also indicate that he understood his role as a juror, the presumption of innocence, and the state's burden of proof. Thus, through additional questioning both individually and in group session, it appears that the juror was successfully rehabilitated. *See Wallace*, 2019-Ohio-442, 130 N.E.3d 999 at ¶ 58-61 (holding that counsel was not ineffective for failing to challenge jurors for cause after certain allegedly biased jurors were rehabilitated through additional questioning by the court).

{¶78} Additionally, one of the juror's other responses indicated a potential strategic reason defense counsel may have wanted the juror to remain. Specifically, the juror's comment in response to a question about the "#MeToo movement" revealed a level of skepticism about the movement and questioned whether an accuser might have something to gain by going public. Thus, Barron's trial counsel's decision to keep the juror could have been within the ambit of trial strategy. *State v. Thompson*, 141 Ohio St.3d 254, 2014-Ohio-4751, 23 N.E.3d 1096, ¶ 225, 227 (observing that few decisions at trial are as prone to individual attorney strategy as voir dire and that trial counsel are in the best position to determine whether a juror can be rehabilitated as they have personally observed the juror's demeanor and statements.).

{¶79} Barron cites a recent Ohio Supreme Court case for the proposition that the failure to strike a juror who admitted bias constitutes ineffective assistance of counsel. *Bates*, 2020-Ohio-634, 159 Ohio St.3d 156, 149 N.E.3d 475. That case, however, is readily distinguishable. The defendant in that case was black, and a Caucasian juror revealed a blatant racial bias against black people in her jury questionnaire. *Id.* at ¶ 27. Neither the court nor the parties ever questioned the juror concerning her admitted racial bias, but she was nonetheless empaneled. *Id.* at ¶ 29. The court held that defense counsel's failure to question the juror about her questionnaire was objectively unreasonable attorney performance under *Strickland* and the juror's statements demonstrated actual bias and thus prejudice. *Id.* at ¶ 32, 37. In the case before us, however, the juror was extensively questioned about his potential bias, and through this questioning the juror was rehabilitated. Consequently, we do not find that Barron has demonstrated that his counsel provided deficient performance for failing to strike the juror, nor does the record indicate that the juror harbored actual bias against Barron.

### C. Failure to Object/Argue for Merger

{¶80} Baron next argues that if this court overrules the allied offense arguments set forth in the preceding assignment of error, then his counsel performed deficiently for failing to argue merger in the proceedings below. For the reasons discussed in the previous assignment of error, we find no error, plain or otherwise, in the failure to merge the offenses, as they were not allied offenses of similar import. Therefore, trial counsel was not ineffective in failing to raise this issue.

{¶81} For the foregoing reasons, we overrule Barron's fourth assignment of error.

*State v. Barron, supra.*

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams*

*(Terry) v. Taylor,* 529 U.S. 362, 379 (2000) *Hendrix v. Palmer,* 893 F.3d 906, 917 (6th Cir. 2018). Deference is also due under 28 U.S.C. § 2254(d)(2) unless the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

With respect to the ineffective assistance of trial counsel claims, the Twelfth District recognized the controlling standard from *Strickland* and purported to apply it. Petitioner's burden, then, is to show the application was objectively unreasonable. Petitioner has not met that burden. In a lengthy section of his Traverse he writes about the discussion during voir dire of implicit bias and the failure of either the trial judge or defense counsel to put to this potential juror the leading question of whether he could put his implicit bias aside.

The Sixth Amendment guarantees a criminal defendant an "impartial" jury, but it does not guarantee him or her a jury with no implicit biases. Indeed, it does not guarantee a judge without implicit biases. Continuing education classes for federal judges in recent years have included instruction on implicit biases and how likely they are to affect a person's thinking. In the face of that instruction judges have been given hypothetical decisions to make of factual questions where the answer is likely to be affected by implicit bias and have usually been found to be unable to correct for it.

To prevail on a claim that he was denied an impartial jury, a defendant must show that a juror with an **actual** bias was seated; implicit bias is not enough. The record shows this particular juror was carefully examined by the trial judge and by defense counsel. His responses display both candor and intelligence, rather than any manipulation of his answers to promote keeping him or disqualifying him. Under those circumstances, Petitioner has not shown he was tried by a jury with a disqualifying bias.

20

Of course, to prevail on an ineffective assistance of trial counsel claim, Petitioner would have to go further and discredit the Twelfth District's analysis of counsel's decision not to strike the juror as possibly strategic. Counsel's tactical decisions are particularly difficult to attack. *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). Indeed, strategic choices by defense counsel are "virtually unchallengeable." *Buell v. Mitchell,* 274 F.3d 337, 359 (6th Cir. 2001), *quoting Meeks v. Bergen*, 749 F.2d 322, 328 (6th Cir. 1984).

As to Petitioner's second ineffective assistance of trial counsel claim about failure to object to the trial court's failure to merge allied offenses, it cannot be ineffective assistance to fail to object when there is no valid legal basis for objection. As the Twelfth District held, the convictions were not for allied offenses of similar import as that term has meaning under Ohio Revised Code § 2941.25.

Petitioner's claims of ineffective assistance of trial counsel should therefore be dismissed with prejudice.

**Ground Five: Separation of Powers**

In his Fifth Ground for Relief, Petitioner argues his sentence under the Reagan Tokes Act was unconstitutional because it violates the separation-of-powers doctrine. The Twelfth District found this claim was defaulted by Barron's failure to raise it in the trial court. *State v. Barron, supra*, ¶ 85. Thus this claim is procedurally defaulted in this Court as well. Barron offers no excusing cause and prejudice and indeed does not discuss this claim in his Traverse.

Moreover, the claim is without merit. The federal separation of powers doctrine is not applicable to the States. *Whalen v. United States*, 445 U.S. 684, 689 n. 4 (1980). As Respondent

writes, "The Sixth Circuit has also held that the separation of powers between a state trial judge and other branches of the state government 'is a matter of state law,' which is not subject to federal habeas review." *Graham v. Warden, Chillicothe Corr. Inst.*, Case No. 1:10-cv-616, 2011 U.S. Dist. LEXIS 100561 at *89 (S.D. Ohio July 22, 2011) (citing *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000).

Ground Five should be dismissed with prejudice.

## Ground Six: Insufficient Evidence of Felonious Assault

In his Sixth Ground for Relief, Petitioner asserts there was insufficient evidence submitted to the jury to support his conviction of felonious assault on Rose Carnahan. He presented this claim as his Sixth Assignment of Error on direct appeal and the Twelfth District decided it as follows:

> {¶88} Barron argues that the state presented legally insufficient evidence to allow a reasonable factfinder to convict him of felonious assault because of a lack of evidence that Rose suffered serious physical harm. When reviewing the sufficiency of the evidence underlying a conviction, an appellate court examines the evidence to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 12th Dist. Fayette No. CA2011-10-026, 2012-Ohio-3205, 2012 WL 2877754, ¶ 9. Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

> {¶89} The jury found Barron guilty of felonious assault, a violation of R.C. 2903.11(A)(1), which prohibits causing "serious physical harm" to another. The Revised Code defines "serious physical harm," in relevant part, as "[a]ny physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity * * *." R.C. 2901.01(A)(5)(c).

{¶90} Amy testified that on one occasion, Rose woke up "dope sick" and locked herself in a bathroom, angering Barron. When she emerged from the bathroom, Barron began hitting her "everywhere." He threw an iron at her and dumped a gallon of milk on her. She started to cry and he told her to stop. She then tried to leave the room and he then "smacked her and knocked her out." Amy confirmed that Rose was "out" after the blow.

{¶91} We find that these facts constitute sufficient evidence of serious physical harm under R.C. 2903.11(A)(1). By rendering Rose unconscious, Barron caused physical harm that involved some "temporary, substantial incapacity." R.C. 2901.01(A)(5)(c). "Being rendered unconscious, no matter how brief, qualifie[s] as a 'temporary substantial incapacity,' which satisfie[s] the serious physical harm requirement." *State v. Spaulding*, 2017-Ohio-7993, 98 N.E.3d 1057, ¶ 13. *Accord State v. McSwain*, 8th Dist. Cuyahoga No. 83394, 2004-Ohio-3292, 2004 WL 1402700, ¶ 29 ("Unconsciousness is a state of temporary, substantial incapacity sufficient to constitute serious physical harm."); *State v. Wimpey*, 6th Dist. Lucas No. L-18-1262, 2019-Ohio-4823, 2019 WL 6312940, ¶ 23.

{¶92} Barron also argues that the evidence was insufficient to establish that he "knowingly" caused Rose serious physical harm because the evidence indicated that he struck her with an open-handed slap. "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).

{¶93} Barron posits that he could not have expected a slap to cause Rose serious physical harm. This argument is meritless. Amy testified that upon rendering Rose unconscious, Barron stated, "that's how you make a bitch shut up." Thus, the evidence, if believed, would support the conclusion that Barron struck Rose with sufficient force so that she would stop crying. The evidence was sufficient to show that Barron was aware that his conduct would cause Rose serious physical harm. We overrule Barron's sixth assignment of error.

*State v. Barron, supra.*

An allegation that a verdict was entered upon insufficient evidence states a claim under the

Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v.*

*Virginia,* 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d

987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(*en banc*).  In order

for a conviction to be constitutionally sound, every element of the crime must be proved beyond a

reasonable doubt.  *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . .  This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *Smith v. Nagy*, 962 F.3d 192, 205 (6th Cir. 2020) (quoting

*Jackson*). This standard "must be applied with explicit reference to the substantive elements of the

criminal offense as defined by state law." *Id.* (quoting *Jackson*, 443 U.S. at 324).  This rule was

recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991).  Of course, it is state law

which determines the elements of offenses; but once the state has adopted the elements, it must

then prove each of them beyond a reasonable doubt.  *In re Winship, supra.*  A sufficiency challenge

should be assessed against the elements of the crime, not against the elements set forth in an

erroneous jury instruction.  *Musacchio v. United States*, 577 U.S. 237 (2016).

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after

enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110

Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

> See *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L.
> Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-
> evaluate the credibility of witnesses, or substitute our judgment for
> that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th
> Cir. 1993). Thus, even though we might have not voted to convict a
> defendant had we participated in jury deliberations, we must uphold
> the jury verdict if any rational trier of fact could have found the
> defendant guilty after resolving all disputes in favor of the
> prosecution. Second, even were we to conclude that a rational trier
> of fact could not have found a petitioner guilty beyond a reasonable
> doubt, on habeas review, we must still defer to the state appellate
> court's sufficiency determination as long as it is not unreasonable.
> See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).  In a sufficiency of the evidence habeas corpus

case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to

the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*,

541 F.3d 652 (6th Cir. 2008); *accord Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011)(en banc);

*Parker v. Matthews*, 567 U.S. 37, 43 (2012). Notably, "a court may sustain a conviction based

upon nothing more than circumstantial evidence." *Stewart v. Wolfenbarger,* 595 F.3d 647, 656

(6th Cir. 2010).

Petitioner's claim as presented in his Traverse is that the evidence was insufficient because

"nowhere in the trial transcript does an expert testify or certify that a slap is something that can

render a person unconscious more often than not."  (ECF No. 40, PageID 2161).  Neither Ohio law

nor the federal Constitution requires expert testimony to prove a person became unconscious as a

result of being struck in the face.  Direct eyewitness testimony that that was the result is sufficient.

Barron argues that an appellate court cannot draw an inference. *Id.* But the issue is not with an

appellate inference, but a jury's crediting the testimony of Amy, the other victim of Barron's

prostitution scheme.  Barron also argues with the jury's conclusion that he knowingly caused Rose

Carnahan harm, but that it hardly an unreasonable inference from his statement to Amy that "that's

how you make a bitch shut up." Rose Carnahan herself did not appear for trial[1], so we do not know whether she would have testified she became unconscious, but Amy's testimony that that was the actual result of Barron's slap to her face is sufficient.

Petitioner's Sixth Ground for Relief is without merit and should be dismissed with prejudice.


**Ground Seven:  Manifest Weight of the Evidence**


In his Seventh Ground for Relief, labeled as an Assignment of Error, Petitioner argues all of his convictions are against the manifest weight of evidence because Amy was not a credible witness. A weight of the evidence claim is not a federal constitutional claim. *Johnson v. Havener*, 534 F.2d 1232 (6th Cir. 1986). Federal habeas corpus is available only to correct federal constitutional violations. 28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1 (2010)*; Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983).  "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); see also *Elmendorf v. Taylor*, 23 U.S. (10 Wheat.) 152, 160 (1825)(Marshall C. J.); *Bickham v. Winn*, 888 F.3d 248 (6th Cir. Apr. 23, 2018)(Thapar, J. concurring).

Ground Seven should therefore be dismissed for failure to state a claim upon which habeas corpus relief can be granted.

---

[1] Her unwillingness or unavailability to testify probably accounts for dismissal of many of the counts of indictment in which she was the named victim.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends this habeas corpus case be dismissed with prejudice.  Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

September 23, 2024.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6, but service is complete when the document is mailed, not when it is received.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. #